UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEREK JOHN POWELL,

        Plaintiff,

  v.                                            Case No. 16-C-1545

NANCY BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

This is an action for review of the final decision of the Commissioner of Social Security denying Plaintiff Derek Powell's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Powell, who appears *pro se*, asserts that the ALJ erred in finding him not disabled. He claims the ALJ overlooked the severity of his conditions and failed to use a "simple formula of work-injury-SSI." Pl.'s Br., ECF No. 16. For the reasons given below, the decision of the Commissioner will be affirmed.

## BACKGROUND

On June 2, 2015, Derek Powell, age 34 at the time, completed an application for a period of disability, disability insurance benefits, and supplemental security income alleging disability beginning July 31, 2014. R. 250, 257. Powell identified the physical conditions that limited his ability to work as back problems, sciatica problems, and knee problems. R. 343. Powell did not identify any mental impairments affecting his ability to work in his initial application. At the time of his application, Powell stood five-feet ten inches, and weighed 300 pounds. *Id.* He indicated

that he stopped working on July 31, 2014 because he was fired from his job because "someone was upset with me at a place where I delivered and because of that they let me go." *Id.*

Powell worked a number of different jobs prior to his alleged onset date, as well as some jobs after the alleged onset date. He graduated from high school in 1999 and received his commercial driver's license in 2013. R. 344. Some of Powell's jobs during the relevant period include chainsaw operator, farmworker, dairy farmworker, produce packer, and tractor-trailer-truck driver. R. 87. Powell also testified that he worked full time for his uncle until July 2015 and continued to work part-time until November 2015. R. 55. The ALJ elected to give Powell the benefit of the doubt and considered the work after the alleged onset date as an unsuccessful work attempt. R. 27.

On July 11, 2016, Powell appeared before ALJ Thomas W. Springer. Powell testified that he suffered from numerous disabling conditions. He testified that he experiences pain in his right knee, right butt, right hip, and in his middle back. R. 75. He explained that doctors diagnosed him with three fractures in his mid-back, a worn-out sciatic joint, mild degenerative disc disease, and arthritis. *Id.* He also testified that he suffered from disabling mental issues, such as anxiety, post-traumatic stress disorder ("PTSD"), and depression from not being able to move. R. 80. Powell testified it is hard for him to bend and that he can only lift five pounds. R. 77–78. When he climbs stairs, Powell asserted he feels a crunching in his back and he feels popping up and down his legs. R. 78. Powell also claimed he has problems doing the dishes because he cannot stand by the counter, is able to mow the grass but has had to go to the emergency room after, and cannot stand in one spot for more than ten minutes but is able to walk two miles in good shoes. R. 76, 79. Powell testified that doctors have instructed him he is not supposed to return to work and that he

is restricted to lifting 10 pounds with no bending. R. 81. He further asserted he received those physical restrictions "every time" he visited a doctor, which he estimated to be 20 times within the previous year. R. 81.

The only other witness to testify at the hearing was a vocational expert (VE). R. 85–95. After having the VE summarize Powell's work history, the ALJ asked the VE whether a hypothetical person who can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and walk about four hours collectively, and sit about six hours, respectively, in an eight hour workday; is precluded from climbing ladders and scaffolding; can occasionally climb ramps and stairs; stoop, crouch, kneel, and craw; should avoid more than occasional exposure to extreme heat and humidity, as well as vibration; and would be off task at the assigned workstation up to ten percent of the workday in addition to regular breaks, due to pain would be able to perform any of Powell's past work. R. 87–88. The VE answered a person would not be able to because the exertional requirements of the past work exceed 20 pounds lifting. R. 88. The VE identified several light and sedentary jobs the hypothetical person could perform, such as assembler, hand packer, inspector. R. 89–91.

In a 12 page decision issued July 21, 2016, the ALJ determined that Powell was not disabled. R. 24–35. The ALJ found at step two that Powell had the following severe impairments; degenerative joint disease of the knees, degenerative joint disease of the lumbar and thoracic spine, and obesity. *Id.* The ALJ also considered Powell's assertion that he suffered from anxiety and PTSD. *Id.* Although the ALJ observed that Powell appeared anxious at the hearing and strenuously tried to introduce additional medical records predating the alleged onset date, he noted the only treatment records that could possibly indicate a mental impairment were: a self-reported diagnosis

3

of anxiety in 2011, a counselor's assessment in connection with an AODA referral in December 2012, and a treatment note in June 2015 where Powell again alleged he suffered from anxiety. R. 607, 611–12, 624. The ALJ concluded that "there is no diagnosis in the record from an acceptable medical source to indicate that the claimant has been diagnosed and treated for anxiety" and determined that Powell does not have any medically diagnosed mental impairments. R. 27.

At step three, the ALJ determined that Powell's impairments did not meet or medically equal any impairments under 20 C.F.R. § 404, Supt. P, App. 1. R. 27–28. The ALJ then concluded that Powell had the residual functional capacity ("RFC") to perform a range of light work except he can lift and carry 20 pounds occasionally and 10 pounds frequently, he can stand and walk about 4 hours collectively and sit about 6 hours respectively over an 8-hour work day. R. 28. He further concluded that Powell is precluded from climbing ladders and scaffolding, he can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs, and he should avoid more than occasional exposure to extreme heat and humidity as well as vibration and would be off task at the assigned work station up to 10% of the work day in addition to regular breaks due to pain. *Id.*

The ALJ largely based his RFC limitations on the conclusions of Dr. George Walcott, a state agency medical consultant. R. 30–31, 116–126. Dr. Walcott reviewed Powell's medical records through January 26, 2016 and concluded Powell is able to lift up to 25 pounds occasionally and 10 pounds frequently and can sit for up to 6 hours and can stand/walk for up to 4 hours in an 8 hour workday due to obesity and knee pain. R. 122. He further limited Powell to only occasional climbing ramps/stairs/ladders/ropes/scaffolds, balancing, bending at the waist, kneeling, bending at the knees, or crawling. R. 123. Dr. Walcott found only Powell only partially credible because despite Powell's asserted limitations, he also "plays basketball at times, he does house/yard work,

4

cares for a child, shops 2–3x wk, and prepares simple meals daily." R. 122. The ALJ also considered the opinions of a second state agency medical consultant, Dr. Pat Chan. R. 31. Although he found that Dr. Chan's opinions were generally consistent with Powell's activities of daily living and the objective evidence of record, the ALJ only gave Dr. Chan's opinions some weight. *Id.* The ALJ determined that the record as a whole showed that Powell has more significant limitations than Dr. Chan's assessment. *Id.*

The ALJ considered Powell's subjective complaints. He noted that in Powell's Function Report dated June 19, 2015, Powell claimed he cannot bend his knees and that it is hard for him to go up and down stairs or get out of the car without trouble. R. 349. Powell further asserted that his impairments limit his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, concentrate, understand, follow instructions, and get along with others because he is constantly in pain unless he is sleeping. R. 354. Powell claimed that Dr. Bart Kneeland limited him to a 10 pound lifting restriction in 2008. R. 357. The ALJ also considered a letter from the Wisconsin Works (W-2) program in which Krissy Neyrinck, the team leader, stated that Powell previously worked within W-2 in 2013 and was re-enrolling in the program as of March 30, 2016. R. 425. Ms. Neyrinck wrote that "Derek is reporting no income and significant barriers to employment." *Id.* The ALJ gave the statement no weight because it provided no specific functional limitations and because it was based entirely on Powell's subjective statements. R. 29.

The ALJ concluded that the objective medical evidence in Powell's record "does not support his significant subjective complaints and does not support more restrictive limitations than those set forth in the above residual functional capacity." R. 30. In July 2015, a lumbar spine MRI showed no acute findings, no spinal stenosis at any level, and only mild facet hypertrophy at L4-5

and mild facet hypertrophy at L5-S1. R. 659. A knee x-ray taken on the same day showed mild degenerative joint disease but no fracture, dislocation, focal destructive bony lesion, or any evidence of a joint effusion. R. 662. Dr. Kneeland, the doctor who allegedly placed the lifting restriction on Powell in 2008, noted in January 2016 that the MRI he took six months prior looked benign and that Powell's pain is only off and on. R. 734. Dr. Kneeland also observed that Powell could bend over, keep his legs straight, and nearly touch the floor. *Id.* Furthermore, a June 6, 2016 lumbar spine x-ray revealed no acute osseous abnormality or significant spondyloisthesis and his degenerative disc disease, although progressing slightly when compared with prior radiographs, remained mild. R. 793.

The ALJ further noted that Powell's treating physicians' and providers' findings do not support Powell's alleged significant physical symptoms. Instead, the ALJ concluded that treatment records "indicate a pattern of attempting to obtain opioid medications that is consistent with drug-seeking behaviors." R. 30. For example, Powell treated with physician assistant Heidi Hammer on June 17, 2015 for left knee pain and lower back pain. R. 624–26. Powell sought narcotic mediation. *Id.* However, Powell exhibited a normal range of motion in all muscle groups, showed no swelling or deformity, and possessed normal strength, reflexes, and gait. R. 625. Powell returned on June 23, 2015 seeking pain medication and received a Vicodin prescription. R. 628. The next month, on July 23, 2015, Powell sought treatment for lower back pain and admitted that he ran out of his Vicodin early. R. 629–630. On August 7, 2015, Powell sought narcotic pain medications form the emergency room despite the fact that his back pain only occurred "rarely." R. 645. The ALJ noted several other instances where Powell sought out narcotics despite arguably

6

having more prescribed dosages before a refill, not showing the level of pain as described, or refusing to comply with treatment instructions. R. 30–31.

The ALJ also noted "a number of incidents throughout the record of the claimant failing to comply with his treating providers' recommended course of treatment for his impairments." R. 32. In August 2015, Powell was discharged from physical therapy because he was non-compliant with his care plan and failed to appear at appointments on four occasions. R. 631–33. Powell failed to appear at chiropractic appointments in 2011 and in 2015. R. 667. He failed to lose weight or stop smoking despite repeated advice from treating providers to do so. In light of these factors, the ALJ found that "[t]hese incidents of failing to take full steps to treat himself appropriately reduce the weight given to the claimant's claims as to the nature and extent of his alleged symptoms and furthermore strongly suggest that the claimant's symptoms would not be so severe if he followed the recommended course of treatment." R. 32.

Following his extensive discussion of Powell's treatment records, the ALJ concluded at step four that Powell was unable to perform his past relevant work. R. 33. Finally at step five, the ALJ concluded, considering Powell's RFC, age, education, and work experience, there are jobs that exist in significant numbers in the national economy that Powell can perform. R. 34–35.

Based on these findings, the ALJ concluded that Powell was not disabled within the meaning of the Social Security Act during the period from April 30, 2015 through the date of his decision. R. 35. Powell requested review by the Appeals Council. R. 19. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Powell's request for review on September 30, 2016. R. 1–4. Powell then commenced this action for judicial review.

**ANALYSIS**

The statute authorizing judicial review of decisions of the Commissioner of Social Security states that the findings of the Commissioner as to any fact, "if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**A. Severity of Powell's Condition**

Powell argues that the ALJ overlooked the severity of his condition. He characterizes his condition as essentially arising from two different "challenges":

> 1. Hollow Back (spinal stenosis). Absolutely no bending or lifting of any kind and standing on cement for any period of ill. Aggravations by doing the smallest twists or movements[,] sitting can paralyze me for days weeks or even months.
>
> 2. DPD (dependent personality disorder). A result of my injury causing mental pain made difficult by people. The suffering sometimes hospitalizing me. I've put [sic] under some control by walking. It agitates me even when seeing doctors or physicians.

Pl.'s Br. In support, Powell has submitted a large quantity of documents which include the Wikipedia pages on dependent personality disorder and spinal stenosis, various unrelated financial records, and medical documents that are duplicates from the administrative transcript in this case. Powell apparently selectively submitted those portions of his treatment notes which he believes demonstrates the severity of his condition. For example, Powell attaches one of the pages from Dr. Mohammed-Iqbal Dodwad's April 6, 2016 examination in which Dr. Dodwad gave him off of work for two days and instructed no lifting. R. 761. He also includes progress notes from a licensed professional counselor in 2012 in which Powell reported he has some "anxiety going on" and in which the counselor noted as part of the mental status examination that Powell was "unable to work." R. 536–547.

The ALJ is required to evaluate every medical opinion received into the record, regardless of its source. 20 C.F.R. § 404.1527(c). The factors that the ALJ should consider in evaluating medical opinions include whether the source has examined the claimant, the length of treatment and frequency of examination, nature and extent of the treatment relationship, the type of support offered for the opinion, consistency of the opinion with the record as a whole, and area of specialization. *Id.*

Here, the evidence shows that the ALJ considered Powell's medical record at length, including the treatment notes which Powell asserts demonstrate the severity of his conditions. In doing so, the ALJ determined that the objective medical evidence showed no more than mild disc and joint degeneration. R. 33. The ALJ did not discuss dependent personality disorder, most likely because the only mental impairments alleged by Powell at the hearing were anxiety and PTSD. R. 27. The ALJ concluded that Powell's treating medical records showed neither a diagnosis nor treatment for the alleged mental impairments and Powell has not provided any evidence that he received either for dependent personality disorder. R. 27.

Despite concluding that the objective medical evidence showed no more than mild disc disease and joint degeneration, the ALJ still fully considered the severity of Powell's impairments. The ALJ gave the opinions of stage agency medical consultant Dr. Chan only some weight in recognition of the fact that the record as a whole showed that Powell has more significant limitations than what Dr. Chan assessed. R. 31. The ALJ ultimately concluded after a meticulous analysis of the record that Powell's "medical treatment records demonstrate that he is interested in obtaining narcotic pain medications, he is interested in obtaining disability insurance benefits, but he is not interested in actual treatment to address his alleged impairments." R. 33. Although Powell may disagree with the ALJ's conclusions, I find that the ALJ carefully evaluated the severity of Powell's conditions and issued a reasoned opinion supported by substantial evidence.

**B. Disability Evaluation Process**

Powell also asserts that the ALJ failed to use a "simple formula of work-injury-SSI." It is unclear what formula Powell wished the ALJ would have used, but the ALJ's decision followed the

SSA's five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ concluded that Powell has not engaged in substantial gainful activity since July 31, 2014, the alleged onset date. R. 26–27. At step two, the ALJ determined that Powell has the following severe impairments: degenerative joint disease of the knees, degenerative disc disease of the lumbar and thoracic spine, and obesity. R. 27. The ALJ considered Powell's claimed mental impairments and concluded that the "treating medical records show neither a diagnosis nor treatment for any mental impairment concurrent with the alleged onset date." *Id.* At step three, the ALJ concluded that Powell does not have an impairment or combination of impairments that meets or medically equals the severity of any impairments under 20 C.F.R. § 404, Supt. P, App. 1. R. 27–28. The ALJ then properly determined Powell's residual functional capacity prior to step four and considered all of Powell's impairments. R. 28–33. At step four, the ALJ concluded that Powell lacks the residual functional capacity to perform any past relevant work. R. 33. Finally at step five, the ALJ considered Powell's age, education, work experience, and residual functional capacity to conclude that jobs exist in significant numbers that Powell could perform. R. 34–35.

In sum, there is nothing in the record suggesting that the ALJ failed to use "a simple formula of work-injury-SSDI." The record demonstrates that the ALJ applied the five-step sequential evaluation process for determining whether an individual is disabled, fully evaluated the evidence of record, and determined that Powell has not been under a disability from the alleged onset date through the date of his decision. Accordingly, I conclude that the ALJ properly followed the SSA's rulings and regulations in making a determination.

## CONCLUSION

For the reasons given above, the decision of the Commissioner is **AFFIRMED**.

Dated this   26th   day of June, 2017.

                                  s/ William C. Griesbach
                                  William C. Griesbach, Chief Judge
                                  United States District Court